IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEL ROBINSON,

        Plaintiff,                     No. CIV S-07-2360 DAD P

    vs.

D.K. SISTO, et al.,

        Defendant.                <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Pending before the court is defendant Clark's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendant has filed a reply. The parties in this action have previously consented to Magistrate Judge jurisdiction for all purposes. <u>See</u> 28 U.S.C. § 636 (c).

## BACKGROUND

        Plaintiff is proceeding on his original complaint. Therein, he alleges as follows. On January 19, 2007, a riot took place on the CSP-Solano yard between Black inmates and Southern Mexican inmates. Although plaintiff was well away from the riot, he was ordered by officers to get down in a prone position near the gymnasium. A group of Southern Mexican

1

prisoners exited the gymnasium and when they saw plaintiff, they attacked him. Plaintiff suffered back and head injuries and a broken facial bone, which has caused visual impairment. Plaintiff claims that defendant Clark, who allegedly let the Southern Mexican inmates out of the gymnasium, failed to protect him in violation of the Eighth Amendment. Plaintiff seeks compensatory and punitive damages. (Compl. at 3 & Attachs.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 5, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory
/////

allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Eighth Amendment and Failure to Protect Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Id. at 834. However, prison officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of another prisoner. Id.

To prevail on such a claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer, 511 U.S. at 834. In this regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

/////

abate it." Id. at 847.  Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety.  Id.

III. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Although the court was once required to answer these questions in order, the United States Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).  If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 129 S. Ct. at 818-21.

In deciding whether the plaintiff's rights were clearly established,"[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law in [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  The inquiry must be undertaken in light of the specific context of the case.  Saucier, 533 U.S. at 201.  Because

qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant's Statement of Undisputed Facts and Evidence</u>

Defendant's statement of undisputed facts is supported by citations to declarations by defendant Clark, Sergeant Primm, Sergeant Vela, and Officer Pavlioglo as well as by citations to the allegations of plaintiff's complaint.

The evidence submitted by defendant Clark establishes the following. On January 19, 2007, at approximately 10:00 a.m., a riot involving 150 Black and Southern Hispanic inmates occurred in front of Building 9 on CSP-Solano's Facility II yard. Defendant Clark was at Facility I, Building I when he heard the Code 3 alarm for the riot. Sergeant Vela and Officer Pavlioglo were in Facility IV when they heard the alarm. Correctional staff from all facilities of the prison respond to any Code 3 alarm incident. (Def.'s SUDF 3-6, Clark, Primm, Vela, & Pavlioglo Decls.)

Defendant Clark responded to the alarm by going to central control to pick up a 40 mm launcher. Sergeant Vela, Officer Pavlioglo, and Officer Lopez responded to the alarm by also going to central control to pick up response equipment. Sergeant Vela, Officer Pavlioglo, and Officer Lopez proceeded to the Facility II yard and formed a skirmish line facing the H-Dorm. After approximately ten minutes, Sergeant Vela ordered officers to go into the H-Dorm to escort Southern Hispanic inmates out of the building. Officers needed to escort Southern Hispanic inmates out of the H-Dorm to prevent their further rioting with Black inmates also housed in that building. Officers provided gun coverage in the H-Dorm while other officers escorted Southern Hispanic inmates out of the building and placed them in the Facility II yard, approximately 50 yards away from the H-Dorm. Once the officers escorted the Southern Hispanic inmates from the H-Dorm, they returned to the Facility II yard and provided coverage

for the inmates placed in front of the H-Dorm. (Def.'s SUDF 7-13, Clark, Primm, Vela, & Pavlioglo Decls.)

Defendant Clark did not escort inmates out of the H-Dorm. After picking up the 40 mm launcher at central control, he instead proceeded to the Facility II yard. Defendant Clark arrived at the Facility II yard and assisted with coverage of the inmates in front of the H-Dorm after Sergeant Vela, Officer Pavlioglo, and Officer Lopez reformed the skirmish line in front of the H-Dorm. While providing coverage, defendant Clark, Officer Lopez, and Officer Pavlioglo were stationed approximately 20 feet away from the Southern Hispanic inmates being escorted out of the dorm. Defendant Clark was prepared to respond in case of potential violence in his immediate area. (Def.'s SUDF 14-18, Clark, Primm, & Pavlioglo Decls.)

As officers providing coverage during the riot, defendant Clark, Officer Lopez, and Officer Pavlioglo could only order the inmates to stay on the ground or fire nonlethal rounds at any inmates that disobeyed their orders and attacked other inmates. Because defendant Clark, Officer Lopez, and Officer Pavlioglo carried nonlethal weapons, they could not approach, make physical contact with, or escort the inmates. If defendant Clark, Officer Lopez, and Officer Pavlioglo made any physical contact with the inmates, they would risk losing their weapons and becoming injured. (Def.'s SUDF 19-21, Clark, Vela, & Pavlioglo Decls.)

The officers providing coverage stood behind all of the inmates they were covering in front of the H-Dorm. By standing behind the inmates, the officers could keep all of the inmates in their sights and make sure that no inmates attempted to attack them from behind. In this way the officers also ensured that all inmates remained on the ground while providing coverage in front of the H-Dorm. Having inmates remain on the ground was the only way the officers could provide coverage and maintain security of the immediate area in front of the H-Dorm. (Def.'s SUDF 22-25, Clark, Vela, & Pavlioglo Decls.)

Sergeant Vela stood behind the skirmish line to keep a full view of the area in front of the H-Dorm. Defendant Clark did not order inmates sitting in front of the H-Dorm to

move to another location because to do so would have jeopardized both their safety and that of prison staff. Most disturbances in the riot occurred in front of Buildings 7, 8, and 9, which were located across the Facility II yard, at least 125 yards from the H-Dorm. No officers were available to escort inmates placed at the front of the H-Dorm because most officers on the Facility II yard were responding to the immediate threat present in front of Buildings 7, 8, and 9. (Def.'s SUDF 26-29, Clark, Vela, Primm, & Pavlioglo Decls.)

The inmates in front of the H-Dorm stayed on the ground in a prone position without any incident for approximately 20 minutes. While officers were providing coverage in that area, several Southern Hispanic inmates without warning suddenly stood up and attacked two Black inmates sitting in front of the H-Dorm. In response to the attack, defendant Clark, Sergeant Vela, Officer Pavlioglo, and Officer Lopez ordered the inmates to get down. The Southern Hispanic inmates did not comply with the officers' orders to get down. Accordingly, defendant Clark, Officer Pavlioglo, and Officer Lopez fired their 40 mm launchers towards the Southern Hispanic inmates. Defendant Clark fired one sponge round towards the right leg of an unidentified Southern Hispanic inmate. (Def.'s SUDF 30-35, Clark, Vela, & Pavlioglo Decls.)

While the officers fired their 40 mm launchers towards the attacking Southern Hispanic inmates, Sergeant Vela continued to yell for the inmates to get down on the ground. After shooting his first round, defendant Clark reloaded his weapon to fire a second round. While defendant Clark was reloading his weapon, officers from other parts of the Facility II yard responded to the incident. By the time defendant Clark reloaded his weapon, the responding officers had arrived on the scene and quelled the incident. The inmates stopped fighting and complied with the orders to get down in the prone position. Officers then proceeded to handcuff and escort inmates out of the yard. Defendant Clark, Sergeant Vela, Officer Pavlioglo, and Officer Lopez continued to provide coverage in the front of the H-Dorm until the Facility II yard was clear of inmates. There were no further incidents in front of the H-Dorm while the officers provided coverage. (Def.'s SUDF 36-44, Clark, Vela, & Pavlioglo Decls.)

1    Defendant Clark did not intend to inflict unnecessary pain or injury on any inmate.
Defendant Clark did not know any of the inmates involved in the attack in front of the H-Dorm.
Defendant Clark does not know plaintiff nor does he know whether plaintiff received injuries as
a result of the attack in front of the H-Dorm. On the day of the riot, defendant Clark was not
aware of any specific threat against plaintiff or against any of the other Black inmates in front of
the H-Dorm. (Def.'s SUDF 45-49, Clark Decl.)

II. Defendant's Arguments

Defense counsel argues that defendant Clark is entitled to summary judgment in his favor because he was not aware of any risk posed to plaintiff, and he acted reasonably when Southern Hispanics attacked Black inmates on January 19, 2007, in front of the H-Dorm. More specifically, counsel contends that defendant Clark was not aware that Southern Hispanic inmates would target plaintiff. Moreover, even if he were subjectively aware, Clark and the other officers acted reasonably and pursued the safest options available: (1) they positioned themselves behind the inmates so that they could respond quickly to any incident; (2) they ordered the inmates to remain on the ground; and (3) they fired their nonlethal launchers toward the attacking inmates. Defense counsel maintains that, in fact, the rapid response by defendant Clark and the other officers successfully quelled the attack without any further incident. (Def.'s Mot. for Summ. J. at 6-7.)

Defense counsel argues that although plaintiff opined during his deposition that defendant Clark could have protected him by moving him to another location or by standing in front of the Southern Hispanic inmates, plaintiff has failed to provide any suggestions on what defendant Clark could have done to maintain security in front of the H-Dorm on the day in question. Counsel contends that any suggested alternatives would not have maintained safety and would have made officers and other inmates vulnerable to blind-side attacks. Counsel asserts that defendant Clark and the other officers pursued the only possible course of action for maintaining security in front of the H-Dorm. (Def.'s Mot. for Summ. J. at 7-8.)

In addition, although plaintiff alleges in his complaint that defendant Clark let the Southern Hispanic inmates out of the H-Dorm, counsel points to defendant Clark's declaration in which he states that he did not escort inmates out of the H-Dorm or place them in the Facility II yard. Moreover, even if he had done so, counsel argues that escorting inmates out of the H-Dorm was a reasonable act to preserve the security of the H-Dorm during the riot. In this regard, counsel reiterates that the officers needed to escort all Southern Hispanic inmates out of the H-Dorm to prevent any possible rioting with the Black inmates who were also in the H-Dorm. (Def.'s Mot. for Summ. J. at 8.)

        Finally, defense counsel argues that defendant Clark is entitled to qualified immunity. Specifically, counsel argues that the undisputed facts show that defendant Clark did not violate plaintiff's rights under the Eighth Amendment. In addition, counsel argues that even if defendant Clark did violate plaintiff's constitutional rights, his actions certainly did not violate any clearly established law. (Def.'s Mot. for Summ. J. at 9.)

III. Plaintiff's Opposition

        Plaintiff's opposition to defendant's motion for summary judgment is supported by a statement of disputed facts and a memorandum of points and authorities.

        Plaintiff contends that, even if defendant Clark did not order the inmates out of the H-Dorm, he was still responsible for the well being of the Black inmates near that area because he was supervising them. According to plaintiff, it is well known that inmates will attack other inmates that are on the ground during a riot. Plaintiff contends that defendant Clark should have known that the Southern Hispanic inmates would attack him, and he should have taken reasonable steps to prevent such an attack. However, according to plaintiff, instead of clearing the area where Black inmates were laying on the ground in front of the H-Dorm, defendant Clark disregarded the risk to their safety. Plaintiff maintains that the officers were so concerned about being attacked themselves that they had no concern for the inmates they had placed on the ground, such as himself . Plaintiff notes that he had no choice but to lay on the

ground during the attack because officers would have fired upon him if he had disobeyed an order to stay in the prone position. (Pl.'s Mem. of P. & A. at 1-3 & 5; Pl.'s SDF 1-3.)

Plaintiff also argues that defendant Clark is not entitled to qualified immunity. Specifically, plaintiff argues that a jury could reasonably find that defendant Clark should have known that Southern Mexican inmates would attack Black inmates once released from the H-Dorm and that defendant Clark was overly concerned about his own safety concerns. Moreover, plaintiff argues that qualified immunity does not act as a shield for individuals who knowingly violate the law. (Pl.'s Mem. of P. & A. at 4-6.)

IV. Defendant's Reply

In reply, defense counsel argues that the evidence in this case shows that defendant Clark lacked any improper motive in carrying out his actions on January 19, 2007. When he arrived on Facility II yard, he did the only thing that he could to ensure the safety of inmates and staff in front of the H-Dorm. He provided gun coverage and responded immediately to any inmates who began to fight. Thus, when Southern Hispanic inmates charged plaintiff, defendant Clark responded by ordering the inmates to get down and by firing a nonlethal round on the inmates when they refused to obey an order. (Def.'s Reply at 2-3.)

Counsel notes that although plaintiff insists that defendant Clark should have cleared the area in front of the H-Dorm when the Southern Hispanic inmates were escorted out of the building, his argument assumes that defendant Clark could safely escort inmates away while providing gun coverage. Counsel contends that such an escort would have further jeopardized the safety of inmates and staff. In addition, counsel argues, most officers on the Facility II yard were responding to incidents in front of Buildings 7, 8, and 9, and there were no officers available to escort inmates away. Finally, counsel asserts that defendant Clark could not escort the inmates himself because he had a non-lethal launcher and could have lost the launcher if he approached an inmate. Counsel reiterates that defendant Clark pursued the only action available to him to ensure inmate and staff safety. (Def.'s Reply at 3.)

1    Finally, counsel again argues that defendant Clark is entitled to qualified
immunity since he did not violate plaintiff's constitutional rights and, even if he did, on January
19, 2007, there were no cases holding an officer liable for failure to protect an inmate when that
officer responded promptly in quelling an attack during a riot. (Def.'s Reply at 3-4.)

**ANALYSIS**

In this case, defendant Clark has borne his initial burden of demonstrating that
there is no genuine issue of material fact with respect to the adequacy of protection he provided
plaintiff on January 19, 2007, when Southern Hispanic inmates attacked him. The evidence
before the court establishes the following. By the time defendant Clark arrived on the Facility II
yard, all of the inmates were face down on the ground. A supervising officer directed Clark to
provide coverage of the inmates in front of the H-Dorm where officers were escorting Southern
Hispanic inmates out of the building to prevent potential fighting between inmates inside the
building. Defendant Clark was stationed approximately 20 feet from the Southern Hispanic
inmates being escorted out of the H-Dorm. He was prepared to respond in case of potential
violence in the area but, because he was carrying a non-lethal weapon, he could only provide
coverage to inmates on the yard. He could not approach inmates or escort them while using a
non-lethal weapon. (Clark Decl. at 2.)

The inmates in front of the H-Dorm had been laying in the prone position for
approximately 20 minutes when without warning several Southern Hispanic inmates stood up
and attacked plaintiff. Defendant Clark responded by ordering the inmates to get down. When
they failed to comply, defendant Clark fired one sponge round on the attacking inmates.
Defendant Clark reloaded his weapon to fire a second round, but by that time officers from other
parts of the yard responded to the attack and quelled the incident. The inmates had stopped
fighting and had complied with the order to get down on the ground in the prone position.
Officers then handcuffed and escorted the inmates in question out of the yard. (Clark Decl. at 3.)
/////

1 | Defendant Clark was not involved in escorting any inmates out of the H-Dorm or
2 | in determining where to place the inmates once they arrived in the Facility II yard. In addition,
3 | defendant Clark did not order inmates sitting in front of the H-Dorm to move to another location
4 | because to do so would have jeopardized the safety of the inmates and staff. Defendant Clark did
5 | not know any of the inmates involved in the attack in front of the H-Dorm. Nor was defendant
6 | Clark aware of any threat against plaintiff or against any of the other Black inmates who were
7 | present. (Clark Decl. at 2 & 4.)

8 | Based on this evidence, the court finds that defendant Clark provided plaintiff
9 | with adequate protection on January 19, 2007. Thus, the burden shifts to plaintiff to establish the
10 | existence of a genuine issue of material fact precluding summary judgment in defendant's favor.
11 | The court has considered plaintiff's opposition to the pending motion for summary judgement as
12 | well as the allegations of his complaint. The undersigned finds that plaintiff has failed to submit
13 | any evidence establishing a legitimate dispute as to any genuine issue of material fact. For
14 | example, plaintiff argues that defendant Clark should have known that Southern Hispanic
15 | inmates would attack him because it is well known that inmates will attack other inmates laying
16 | on the ground during a riot. However, in this case, there was no indication that Southern
17 | Hispanic inmates would attack plaintiff. As noted above, for approximately 20 minutes all of the
18 | inmates in front of and near the H-Dorm had complied with officers' orders to lay on the ground
19 | in the prone position while defendant Clark, Sergeant Vela, Officer Pavlioglo, and Officer Lopez
20 | provided coverage. There was no indication that an attack was underway or imminent or that any
21 | of the inmates, including plaintiff, feared for their health or safety at the time. As plaintiff
22 | himself acknowledges, the Southern Hispanic inmates did not say anything or yell anything
23 | before the attack, but rather in a matter of seconds they jumped up, rushed towards him, and
24 | attacked him. (Pl.'s Dep. at 52.) Under these circumstances, no reasonable fact finder could
25 | conclude that defendant Clark knew or should have known of a substantial risk of serious harm
26 | to plaintiff and disregarded that risk. See Farmer, 511 U.S. at 847; Berg v. Kincheloe, 794 F.2d /

457 (9th Cir. 1986) (under the deliberate indifference standard a prison official must have more than a "mere suspicion" that an attack will occur).

Moreover, even if defendant Clark did know of a substantial risk of serious harm to plaintiff, he responded reasonably to any such risk. See Farmer, 511 U.S. at 844-45. ("Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). First, there is no evidence before the court that defendant Clark was involved in escorting the Southern Hispanic inmates out of the H-Dorm. Even plaintiff testified during his deposition that he never saw defendant Clark escorting inmates out of the dorm and could not recall whether he even saw defendant Clark enter the H-Dorm. (Pl.'s Dep. at 36-40.) However, assuming for the sake of argument that defendant Clark was involved in escorting Southern Hispanic inmates out of the H-Dorm, his actions were nonetheless reasonable. A riot had taken place between Southern Hispanic and Black inmates on the adjacent yard. To prevent further rioting in the H-Dorm between to the two groups, officers had to escort one of the groups out of the building. Officers escorted Southern Hispanic inmates out of the building and ordered them to stay in the prone position 50 yards away from the H-Dorm.

Defendant Clark provided coverage of the area at all relevant times and acted reasonably and swiftly when the Southern Hispanic inmates attacked plaintiff. He ordered them to get down and fired one sponge round at the attacking inmates when they failed to comply with his order and the orders of Sergeant Vela, Officer Pavlioglo, and Officer Lopez. Defendant Clark then reloaded his weapon and was prepared to fire a second round, but by that time other officers had quelled the incident. Plaintiff does not dispute these facts nor does he provide the court with any evidence whatsoever to suggest that defendant Clark's response was unreasonable or delayed. Again, under these circumstances no reasonable fact finder could conclude that defendant Clark was deliberately indifferent to plaintiff's health or safety.

/////

Finally, although plaintiff believes that defendant Clark should have cleared the area where Black inmates were laying on the ground in front of the H-Dorm, plaintiff has failed to demonstrate that such a course of action would have been more advisable or even possible. Defendant Clark, on the other hand, has submitted a declaration signed under penalty of perjury declaring that he could only provide coverage to inmates on the yard because he was carrying only a non-lethal weapon. He explains that he was not allowed to approach inmates or escort inmates armed with a non-lethal weapon. In addition, no other officers could escort the inmates in front of the H-Dorm away because most of the other officers were already engaged on the yard responding to the riot and the immediate threat it posed. (Clark Decl. at 2-3.)

Based on the evidence of record in this case, the court simply cannot say that defendant Clark should have done anything differently before or during the attack on plaintiff. See, e.g., Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) ("Regardless of whether it was prudent for [prison officials] to order the release of the yard after learning that Hispanics were planning to attack 'one of their own,' there is no evidence that [the defendant] should have done anything differently once this decision was made. He kept a close eye on the inmates once they were released and, when trouble began, he immediately shouted 'yard down' and fired warning shots.").

Accordingly, for the reasons set forth above, the court concludes that defendant Clark is entitled to summary judgment in his favor on plaintiff's Eighth Amendment claim.[1]

**OTHER MATTERS**

In his opposition to defendant Clark's motion for summary judgment, plaintiff briefly suggests that the court should deny the motion because he has not had an opportunity to complete discovery. Plaintiff is advised that, under this court's scheduling order, discovery closed on January 2, 2009. In the absence of good cause, the court will not modify the

---

[1] In light of this decision on the merits of plaintiff's Eighth Amendment claim, the court declines to address defendant Clark's argument that he is entitled to qualified immunity.

scheduling order.  See Fed. R. Civ. P. 16(f); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  Here, plaintiff has not provided the court with any reason as to why it should re-open discovery.  Nor has plaintiff explained what additional discovery he seeks or why he was unable to complete discovery in the time allotted.  Moreover, to the extent that plaintiff seeks relief under Rule 56(f) of the Federal Rules of Civil Procedure, he has failed to submit an affidavit or demonstrate in any way that there are specific facts he hopes to discover that could raise an issue of material fact in this case.  Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir. 1991); Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991).  "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists."  Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987).  See also Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party opposing summary judgment "has the burden under Rule 56(f) to show what facts [he] hopes to discover to raise an issue of material fact").  Accordingly, to the extent that plaintiff seeks to re-open discovery or obtain relief under Rule 56(f), plaintiff has failed to submit a proper request or make the requisite showing.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant's February 27, 2009 motion for summary judgment (Doc. No. 32) is granted; and

2. This action is closed.

DATED: May 11, 2009.

DAD:9
robi2360.57

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

17